JONES v BOTSFORD CONTINUING CARE CORPORATION

Docket No. 317573. Submitted December 4, 2014, at Detroit. Decided
    April 7, 2015, at 9:05 a.m.

    Mildred Jones, as the personal representative of the estate of Amos
        Jones, brought a medical malpractice action in the Oakland
        Circuit Court against Botsford Continuing Care Corporation, Dr.
        Thomas Selznick, and Livonia Family Physicians, PC. After being
        admitted to Botsford and while in an agitated state, Amos pulled
        out a percutaneous endoscopic gastronomy (PEG) tube that had
        been inserted through his abdominal wall to provide him nutri-
        tion. The tube was reinserted approximately eight hours later.
        Plaintiff alleged that the tube was improperly reinserted leading
        to an infection and Amos's death. Defendants moved for summary
        disposition under MCR 2.116(C)(10), asserting that plaintiff's
        affidavits of merit were defective. The trial court agreed and
        dismissed the case. Plaintiff appealed. Botsford cross-appealed,
        asserting that the dismissal should have been with prejudice.

        The Court of Appeals held:

        1. Under MCL 600.2912d, the plaintiff in an action alleging
        medical malpractice must file with the complaint an affidavit of
        merit signed by a health professional who the plaintiff's attorney
        reasonably believes meets the requirements for an expert witness
        under MCL 600.2169. The controlling question under MCL
        600.2912d is whether the plaintiff's counsel has a reasonable
        belief that the affiant will qualify to testify regarding the stan-
        dard of care under MCL 600.2169. In this case, Botsford asserted
        that plaintiff's affidavit of merit regarding nursing malpractice
        was defective because it was signed by a registered nurse (RN)
        instead of a licensed practical nurse (LPN). Botsford's argument
        rested on its assertion that the caregiver who reinserted the PEG
        tube was an LPN, but Botsford offered no evidence supporting
        that assertion. And, in any event, given the limited evidence
        available at the time the affidavit of merit was filed, it was
        reasonable for plaintiff's counsel to conclude that the relevant
        nurse was an RN. Notably, Botsford failed to respond to the notice
        of intent to file a claim that plaintiff had sent Botsford with a
        statement of the factual basis for Botsford's defense to the claim,

as required by MCL 600.2912b(7)(a), a statement that presumably would have identified whether the nurse was an RN or an LPN. In addition, plaintiff's counsel's legal conclusion that an RN may offer standard of care testimony against an LPN was reasonable given that the question has not been definitively addressed by the courts, and the statutory definitions for the practice of nursing as an RN and as an LPN set forth in MCL 333.17201(1) make clear that any work performed by an LPN may also be performed by an RN, and that RNs may direct and supervise LPNs in the performance of their duties. Accordingly, the trial court erred when it concluded that plaintiff's affidavit of merit regarding the alleged nursing malpractice was defective and when it dismissed the claims against Botsford that were based on the allegations of nursing malpractice. It was reasonable for plaintiff's counsel to believe that an RN could sign the affidavit of merit.

2. Under MCL 600.2169, in an action alleging malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional and, if the party against whom the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom the testimony is offered. If the party against whom the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty. A certificate of special qualification is a board certification. In this case, plaintiff's affidavit of merit regarding physician malpractice was signed by Dr. Gregory Compton. The parties disputed whether plaintiff's counsel reasonably believed that Compton, who was board certified in internal medicine with a subspecialty certification in geriatrics, was qualified to testify regarding the standard of care for Selznick, who was board certified in family practice with a certificate of added qualification in geriatrics. Plaintiff's counsel's belief that Compton could testify regarding the appropriate standard of care was reasonable, both legally and factually, at the presuit stage of the proceedings. Selznick's own website stated that he was board certified in geriatrics, and he was the medical director of a nursing home—a position that one would reasonably conclude could not be obtained by physicians who do not specialize in geriatric medicine. And Selznick failed to respond, as required by MCL 600.2912b(7), to plaintiff's notice of intent, which expressed plaintiff's counsel's belief that Selznick was a geriatrics specialist practicing geriatrics at the time in question. Had Selznick complied with this mandate and had he actually asserted what he later claimed in

court, i.e., that he was not a geriatric medicine specialist, plaintiff's counsel would have filed an affidavit from a physician whose specialty qualifications matched those claimed by Selznick. Failure to have provided the mandatory response, while not an active assertion of agreement with plaintiff's understanding of the relevant expertise, provided an additional reason for plaintiff's counsel to have reasonably concluded that Selznick was a specialist in geriatric medicine. Further, a certificate of special qualification in geriatric medicine is a board certification in geriatric medicine. Because board certification in geriatric medicine is available to physicians with the necessary training and experience, geriatric medicine is a specialty. If Selznick, who was board certified in both family medicine and geriatric medicine, was practicing geriatric medicine at the time this case arose, then the one most relevant specialty was geriatric medicine, and both Selznick and Compton were board certified in the one most relevant specialty. Under the circumstances, plaintiff's affidavit of merit regarding Selznick satisfied MCL 600.2912d, and the trial court erred when it granted summary disposition in favor of defendants regarding the claims of physician malpractice.

Reversed and remanded.

DONOFRIO, P.J., concurring in part and dissenting in part, concurred with the result reached by the majority with respect to reversing the grant of summary disposition on plaintiff's nursing malpractice claim, but disagreed that plaintiff's counsel could have held a reasonable belief that Compton was qualified to give standard of care testimony regarding Selznick and would have affirmed the trial court's grant of summary disposition on the physician malpractice claims. With regard to the nursing malpractice, Botsford failed to support its motion for summary disposition with documentary evidence. Looking at the nursing notes in the light most favorable to plaintiff, there was a question of fact regarding whether an RN or an LPN reinserted the PEG tube. Summary disposition, therefore, was not appropriate. Judge DONOFRIO did not join, however, the majority's discussion related to whether an RN may offer standard of care testimony concerning an LPN, because the discussion was not necessary to resolve the issue presented in this case. Regarding the claims of physician malpractice, although Compton's and Selznick's board certifications in their subspecialties shared the common word "geriatrics," their certifications were not equivalent. Compton's board certification of geriatrics in the field of internal medicine was not the same as Selznick's board certification of geriatrics in the field of family medicine. As a result, under MCL 600.2169(1)(a), Compton was not

qualified to testify to the standard of care at trial against Selznick. And plaintiff's counsel's belief that Compton was qualified was not reasonable because looking at Selznick's website as a whole, it should have been apparent that plaintiff's counsel needed an expert who was board certified in geriatrics in the field of family medicine. Regarding plaintiff's assertion that she should have been permitted to amend any defective affidavit of merit, the trial court's failure to reach the issue was reasonable because plaintiff never actually pursued that remedy.

*Bendure & Thomas* (by *Mark R. Bendure*) and *McKeen & Associates, PC* (by *Andrew F. Kay*), for Mildred Jones.

*Riley & Hurley, PC* (by *Robert F. Riley* and *Allison M. Ensch*), for Thomas Selznick and Livonia Family Physicians, PC.

*Tanoury, Nauts, McKinney & Garbarino, PLLC* (by *Linda M. Garbarino* and *David R. Nauts*), for Botsford Continuing Care Corporation.

Before: DONOFRIO, P.J., and FORT HOOD and SHAPIRO, JJ.

FORD HOOD, J. Plaintiff, Mildred Jones, as the personal representative of the estate of her husband, Amos Jones, appeals from the trial court order granting summary disposition in favor of defendants, Botsford Continuing Care Corporation, Dr. Thomas Selznick, and Livonia Family Physicians, PC, in this medical malpractice and wrongful-death lawsuit. For the reasons set forth in this opinion, we reverse and remand.

## I. FACTS

Amos Jones, an elderly man, was admitted to Botsford Continuing Care (BCC), an extended care facility, for care following hospitalization for a stroke. As a

result of the stroke, Jones had difficulty swallowing and so during his hospitalization, a percutaneous endoscopic gastrostomy (PEG) tube was surgically inserted through his abdominal wall and into his stomach in order to provide nutrition. When Jones was admitted to BCC on November 12, 2007, the PEG tube was in place. According to the hospital nursing progress notes, during his stay and while in an agitated state, Jones pulled out the PEG tube. The PEG tube was reinserted approximately eight hours later. Plaintiff's complaint alleged that the PEG tube was improperly reinserted and that as a result, gastric contents and nutritional material were released outside Jones's stomach and into his abdominal space, causing a massive infection that killed him.

Before filing suit, in accordance with MCL 600.2912b(1), plaintiff mailed a notice of her intent to file claim to the individuals and entities later named as defendants. The notice satisfied the requirements of MCL 600.2912b(4).

Pursuant to MCL 600.2912b(7), each recipient of the notice was required to "furnish to the claimant . . . a written response . . . ." The statute requires that a potential defendant's written response contain a statement regarding four items, including "[t]he factual basis for the defense to the claim." MCL 600.2912b(7)(a). However, defendants each failed to send a written response, thus violating this statutory mandate.

When plaintiff filed the complaint initiating this lawsuit, her attorney attached two affidavits of merit as required by MCL 600.2912d. One of the affidavits attested to physician malpractice and was signed by Dr. Gregory Compton, who in his affidavit stated that at the relevant time he "was a licensed and practicing

INTERNAL MEDICINE and GERIATRIC MEDICINE Doctor . . . ." The other affidavit attested to nursing malpractice and was signed by Amy Ostrolenk, who averred that she was an "R.N." and "was . . . licensed and practicing nursing."

As required by MCL 600.2912e, defendants filed affidavits of meritorious defense. Two affidavits were filed in response to the claim of physician malpractice. The one submitted by BCC (which plaintiff alleged was liable for any negligence by Dr. Selznick under an agency theory) was signed by Dr. Alan Neiberg, who averred that during the relevant period he was "board certified in the specialty of internal medicine, and . . . devoted a majority of [his] professional time to the active clinical practice of my profession of internal medicine." The affidavit submitted on behalf of Dr. Selznick personally was signed by Dr. Selznick himself and averred that he is "certified by the American Board of Family Practice and ha[s] a Certificate of Added Qualification in Geriatrics."

BCC's affidavit of meritorious defense filed in response to the claim of nursing malpractice was signed by Marguerite Debello, who averred that she was "a registered nurse" and during the relevant period "devoted a majority of my professional time to the active clinical practice of my profession of nursing."

MCL 600.2912d(1) and MCL 600.2912e(1) respectively require that the affidavits of merit and meritorious defense be "signed by a health professional who the [party]'s attorney reasonably believes meets the requirements for an expert witness under section 2169." Accordingly, per the requirements for an expert witness under MCL 600.2169(1)(a), each party's attorney must have had a reasonable belief that their respective affiant "specialize[d] at the time of the

occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered."[1] MCL 600.2169(1)(a), which refers to specialists, does not apply to nurses, see *Cox v Flint Bd of Hosp Managers*, 467 Mich 1, 18, 22; 651 NW2d 356 (2002) (addressing MCL 600.2912a, which sets forth the standard of care in medical malpractice cases), but MCL 600.2169(1)(b) does, because it applies to all health professionals. This provision requires that during the year preceding the incident, the testimonial expert have devoted a majority of his or her professional time to "[t]he active clinical practice of the same health profession in which the [defendant] . . . is licensed ·. . . ." MCL 600.2169(1)(b)(*i*).

Defendants moved for summary disposition under MCR 2.116(C)(10), asserting that the affidavits filed by plaintiff's counsel did not satisfy MCL 600.2912d because the affiants did not meet the requirements of MCL 600.2169(1)(a) and (b), respectively, and that plaintiff's counsel could not have had a reasonable belief that they did. BCC asserted that plaintiff's affidavit of merit alleging nursing malpractice should have been signed by a licensed practical nurse (LPN) and that plaintiff's counsel could not have reasonably believed that a registered nurse (RN) could offer standard of care testimony. Both BCC and Dr. Selznick asserted that plaintiff's affidavit of merit alleging physician malpractice should have been signed by a family practitioner and that plaintiff's counsel could not have had a reasonable belief that Dr. Compton had the proper qualifications.

---

[1] This requirement may also be met if the proffered expert has spent the relevant period instructing students in the relevant field at a health professional school or accredited residency or clinical research program. MCL 600.2169(1)(b)(*ii*). This aspect of the statute is not relevant to the issues in this case.

The trial court ruled that the affiants did not satisfy the requirements of MCL 600.2169(1) and, on this basis, dismissed the case. The court did not, however, address plaintiff's argument that her counsel had a reasonable belief that the affiants met the testimonial requirements.[2] Plaintiff appeals from that ruling and BCC cross-appeals on the grounds that the dismissal should have been with prejudice.[3]

## II. STANDARD OF REVIEW

A trial court's ruling on a motion for summary disposition presents a question of law reviewed de novo. *Titan Ins Co v Hyten*, 491 Mich 547, 553; 817 NW2d 562 (2012). Questions of statutory interpretation are also reviewed de novo including the statutory requirements for affidavits of merit. *Lucas v Awaad*, 299 Mich App 345, 377; 830 NW2d 141 (2013). "Our goal when interpreting and applying statutes or court rules is to give effect to the plain meaning of the text." *Ligons v Crittenton Hosp*, 490 Mich 61, 70; 803 NW2d 271 (2011).

## III. ANALYSIS

Whether an expert may provide standard of care testimony at trial is governed by MCL 600.2169. However, whether an affidavit of merit signed by an expert

---

[2] In fact, the trial court indicated that it believed plaintiff's selection of Dr. Compton as his standard of care expert was reasonable, but it did not address the significance of that finding.

[3] Before the case was appealed in this Court, plaintiff resubmitted her respective affidavits, this time signed by a family practitioner and an LPN. The parties dispute whether these constituted amended affidavits for purposes of MCR 2.112(L)(2)(b). While we do not subscribe to the dissent's cursory treatment of this question, we need not address it ourselves given our conclusion that the originally filed affidavits were sufficient.

is adequate is governed by MCL 600.2912d. This provision requires that plaintiff's counsel "reasonably believes" that the affiant "meets the requirements" of MCL 600.2169, not that the affiant actually meet those requirements for purposes of trial testimony. "The Legislature's rationale for this disparity is, without doubt, traceable to the fact that until a civil action is underway, no discovery is available. See MCR 2.302(A)(1)." *Grossman v Brown*, 470 Mich 593, 599; 685 NW2d 198 (2004).

Both this Court and the Supreme Court have been careful to distinguish these standards and to recognize that "at trial the standard is more demanding because the statute states that a witness *'shall not* give expert testimony' *unless* the expert 'meets the [listed] criteria' in MCL 600.2169(1)." *Id*. (emphasis added; alteration in original). By contrast, the issue for purposes of MCL 600.2912d is not whether the expert signing the affidavit may ultimately testify at trial. The controlling question under MCL 600.2912d is whether plaintiff's counsel had a reasonable belief that the affiant would qualify. The fact that the Legislature used the language "reasonably believes" demonstrates that there will be cases in which counsel had such a reasonable belief even though the expert is ultimately shown not to meet the criteria of MCL 600.2169(1).

In *Brown v Hayes*, 477 Mich 966 (2006), the Supreme Court reiterated this point. It concluded that even when the expert in question did not qualify to testify under MCL 600.2169, the affidavit should not be stricken when counsel had a reasonable belief that the expert did qualify. *Id*. Indeed, in *Hayes*, the attorney had not made an error of fact (as in *Grossman*), but had incorrectly, but reasonably, construed the statutory requirements. *Id*.

This Court has similarly noted the differing tests for whether an expert may testify at trial on the standard of care and for whether a health professional may sign an affidavit of merit. In *McElhaney v Harper-Hutzel Hosp*, 269 Mich App 488, 497-498; 711 NW2d 795 (2006), we held that the plaintiff's experts did not qualify, under MCL 600.2169, to testify regarding the standard of care. However, regarding the propriety of the affidavit of merit signed by one of those experts as to alleged malpractice by a nurse midwife, we concluded that "plaintiff's attorney's belief that an obstetrician/gynecologist met the requirements for an expert witness under § 2169 was reasonable." *Id.* at 495-496. Therefore, the issue is not whether the attorney's judgment proves to be incorrect, but rather whether the attorney's belief, though erroneous in hindsight, was reasonable at the time.

In light of these principles, we now review the trial court's conclusion that the affidavits of merit filed with plaintiff's complaint did not comply with MCL 600.2912d. We will address separately the nursing affidavit of merit and the physician affidavit of merit. Plaintiff's claims against BCC are based on the actions of two separate agents, i.e., the relevant nurse(s) and its staff physician, Dr. Selznick. Plaintiff's claims against Dr. Selznick and his practice are based solely on his individual actions.

### A. NURSING MALPRACTICE

Regarding the claims of nursing malpractice, we conclude that the trial court erred because it was not unreasonable for plaintiff's counsel to obtain an affidavit of merit from an RN.

BCC's argument that the case must be dismissed rests first and foremost on its assertions that the

caregiver who reinserted the PEG tube was an LPN and that this information was available in the medical records. However, defendant has offered no *evidence* that this assertion is true. Indeed, a review of the medical records makes clear that the relevant caregiver is not identified as an LPN or by name.

The sole basis for BCC's assertion is a single page of handwritten nursing notes dated November 15, 2007, much of which is illegible. There is a note timed at 12:00 a.m. that appears to have been signed by an LPN, albeit with an illegible signature. BCC claims in its brief that this nurse reinserted the PEG tube. However, this assertion is simply not supported by the nursing notes, insofar as they can be deciphered, or by any other proofs or affidavits. Significantly, the 12:00 a.m. note does not say that the nurse on duty then reinserted the tube. Rather, reinsertion of the PEG tube is first referred to in a nursing note written eight hours later, at 8:00 a.m., in which a different author writes, "peg tube replaced[.]" The 8:00 a.m. note is signed, but the signature is illegible and the 8:00 a.m. note does not indicate whether the person making the entry was an LPN or RN. It is also readily apparent upon observation of the 8:00 a.m. note that it was not written by the same individual who wrote the 12:00 a.m. note.[4]

Even if we were to accept as true BCC's unsupported assertion regarding the identity of the relevant caregiver, a proposition wholly inconsistent with our stan-

---

[4] The next nursing note was written at 2:15 p.m. on the same day. The signature of the note's author is again illegible and again no medical title appears. It states that the patient's family visited and found the patient short of breath. The author of the 2:15 p.m. note wrote that he or she then placed a call to a physician assistant, who did not answer. He or she then advised the nursing supervisor on the unit who directed that Jones be transferred to the hospital emergency department. According to the note, at that time, Jones was "no[t] really responding."

dard of review, it would not alter the outcome of this appeal because plaintiff's attorney had a reasonable belief that the affiant could testify.

First, given the limited evidence available at the time the affidavit of merit was filed, it would have been reasonable for plaintiff's counsel to have concluded that the relevant nurse was an RN. As stated by our Supreme Court in *Grossman*, 470 Mich at 599-601, when determining the reasonableness of an attorney's belief at the affidavit of merit stage, we look to the resources available to that attorney at the time the affidavit was prepared. As just noted, the medical records did not provide the relevant information. Moreover, BCC never complied with its statutory duty to respond to plaintiff's notice of intent to file a claim with a written statement providing "[t]he factual basis for the defense to the claim" in which it presumably would have identified the caregiver who reinserted the PEG tube and his or her qualifications. MCL 600.2912b(7)(a). Indeed, the reasonableness of the belief that an RN could properly sign the affidavit of merit in this case is demonstrated by the fact that BCC's affidavit of meritorious defense was signed by an RN, not an LPN. Given that BCC's attorneys, who (unlike plaintiff's counsel) had full access to hospital staffing records and the relevant caregivers, concluded that an RN was the proper affiant, it would certainly seem that the same judgment, when made earlier by plaintiff's counsel with far less information, was a reasonable one.

Second, we find reasonable plaintiff's counsel's legal conclusion that an RN may offer standard of care testimony against an LPN. Whether an RN may ultimately offer such testimony at trial is not before us and we do not decide that issue, but plaintiff's counsel's conclusion that an RN was a proper affiant, even if the

relevant actor was an LPN, would not have been unrea-
sonable given the fact that the issue has not been
definitively addressed and there is law that supports his
conclusion.

Indeed, the statutory definitions of LPN and RN
support this conclusion, as does the relevant caselaw.
Both RNs and LPNs are licensed in the "practice of
nursing." MCL 333.17201(1)(a), which defines this
practice, provides:

> "Practice of nursing" means the systematic application
> of substantial specialized knowledge and skill, derived
> from the biological, physical, and behavioral sciences to
> the care, treatment, counsel, and health teaching of indi-
> viduals who are experiencing changes in the normal
> health processes or who require assistance in the mainte-
> nance of health and the prevention or management of
> illness, injury or disability.

The same section goes on to define the practice of
nursing as an LPN and as an RN:

> (b) "Practice of nursing as a licensed practical nurse" or
> "l.p.n." means that practice of nursing based on less com-
> prehensive knowledge and skill than that required of a
> registered professional nurse and performed under the
> supervision of a registered professional nurse, physician or
> dentist.
>
> (c) "Registered professional nurse" or "r.n." means an
> individual licensed under this article to engage in the
> practice of nursing which scope of practice includes the
> teaching, direction, and supervision of less skilled person-
> nel in the performance of delegated nursing activities.
> [MCL 333.17201(1).]

Consistently with these definitions, MCL 333.17208
provides that "[t]he practice of nursing as a licensed
practical nurse is a health profession subfield of the
practice of nursing."

These statutory definitions make clear that any work that may be performed by LPNs may also be performed by RNs. Indeed, RNs can direct and supervise LPNs in the performance of their duties. Each is wholly engaged in the "practice of nursing" and neither has any specialty training.[5] The only difference is the extent of their general training and authority. The situation appears analogous to that of a physician specialist as to a resident physician in specialty training. In *Bahr v Harper-Grace Hosps*, 448 Mich 135; 528 NW2d 170 (1995), the Supreme Court held that a physician who is a fully qualified specialist may testify regarding the standard of care applicable to a resident physician training in that specialty. See also *Gonzalez v St John Hosp & Med Ctr (On Reconsideration)*, 275 Mich App 290; 739 NW2d 392 (2007).

In sum, we conclude that the trial court erred by dismissing the claims against BCC that are based on allegations of nursing malpractice. We reach this conclusion for each of the following reasons: (a) there is a question of fact whether the nurse in question was an LPN or an RN, (b) given BCC's failure to respond to the notice of intent and identify whether the nurse in question was an LPN or RN, that information was not reasonably available to plaintiff's counsel when the complaint and affidavits of merit were filed and (c) it would have been reasonable for plaintiff's counsel to conclude that an RN could offer testimony regarding the standard of care for an LPN.

### B. PHYSICIAN MALPRACTICE

The claims of physician malpractice apply directly to Dr. Selznick, and to his practice and BCC through agency.

---

[5] Unlike a nurse midwife or a nurse practitioner, neither an RN nor an LPN is within a "health profession specialty field." MCL 333.16105(3).

As discussed earlier, the question before us is not whether Dr. Compton may offer standard of care testimony at trial. The sole question is whether at the time he prepared the affidavit of merit, plaintiff's counsel reasonably believed that Dr. Compton met the requirements of MCL 600.2169(1)(a). Similar to our conclusions with regard to the nursing issue, we conclude that counsel's belief was reasonable and we find that there were both factual and legal grounds for that belief.

Factually, plaintiff's expert affiant attested that at the relevant time, he was a specialist in two areas of medicine, one of which was geriatric medicine, and that more than 50% of his practice was in that specialty. Plaintiff's counsel believed that at the relevant time, Dr. Selznick was also a specialist in geriatric medicine. Dr. Selznick now asserts that his only specialty is in family medicine and that he is not a specialist in geriatric medicine. We conclude, however, that plaintiff's counsel's conclusion that Selznick was a geriatric specialist was a reasonable one, at least at the presuit stage.

First, Dr. Selznick's professional biography on his own website affirmatively states that he is "Board Certified in . . . Geriatrics." We find it difficult to accept that a doctor may publicly advertise himself as having a particular specialty and then claim that no one could have reasonably believed that his assertion was true.

Second, given that plaintiff was an elderly man in a nursing home, it would be reasonable for plaintiff's counsel to have concluded that the one most relevant specialty was geriatric medicine. Indeed, Dr. Selznick was the medical director of the nursing home, a position which one would reasonably conclude could not be obtained by physicians who do not specialize in geriatric medicine.

Third, plaintiff's notice of intent made absolutely clear that plaintiff's counsel believed that Dr. Selznick was a specialist in geriatric medicine and that geriatric medicine was the specialty that he was practicing at the time in question. The notice further asserted that the relevant standard of care was the one applicable to geriatric medicine specialists. Upon receipt of the notice of intent, Dr. Selznick had a statutory duty to respond with "a written response that contains a statement of" (a) the factual basis for the defense to the claim and (b) the standard of practice or care that he claimed applied to the action. MCL 600.2912b(7). Had Dr. Selznick complied with this mandate and had he actually asserted what he now claims, i.e., that he is not a geriatric medicine specialist, plaintiff's counsel would have filed an affidavit from a physician whose specialty qualifications matched those claimed by Dr. Selznick. Failure to have provided the mandatory response, while not an active assertion of agreement with plaintiff's understanding of the relevant expertise and, therefore, not a formal admission, surely provides an additional reason (along with Dr. Selznick's website claims and his position as medical director of a geriatric nursing home) for plaintiff's counsel to have reasonably concluded that Dr. Selznick is a specialist in geriatric medicine.[6]

---

[6] The dissent suggests that Dr. Selznick did file a "response" to plaintiff's notice of intent. The document to which the dissent refers is a one-paragraph letter denying that Dr. Selznick bears any responsibility for Jones's death and is signed by an untitled employee of "the Third party Administrator for the Freedom Specialty Insurance Company." This letter is clearly not a response within the meaning of MCL 600.2912b(7), which specifically provides that a written response must comply with the requirements of MCL 600.2912b(7)(a) through (d), which this letter does not even attempt to do. The letter is not a response to plaintiff's notice of intent any more than a letter of accusation from a decedent's family, without the content required by MCL 600.2912b(4), is

Dr. Selznick does not dispute that he has special training and experience in geriatric medicine. He also does not dispute that he has a certificate of added qualification in geriatric medicine. Nevertheless, he asserts that this is not the equivalent of a board certification. Indeed, he appears to assert that there is no such thing as a specialty in geriatric medicine and that any conclusion that there is such a specialty is unreasonable. We disagree.

In the decade following the passage of 1993 PA 78, many issues arose concerning the exact nature of the requirements it adopted in medical malpractice cases. Many of these difficulties arose from questions about expert qualifications, particularly the issue of "matching" specialties. Most of these issues were resolved by our Supreme Court in *Woodard v Custer*, 476 Mich 545; 719 NW2d 842 (2006). However, some issues escaped conclusive treatment in *Woodard*. One of these remaining issues is what constitutes an expert "match" when a physician has a board certification, but also carries a certificate of added qualification. This is particularly true when, at the time of the occurrence that is the basis of the medical malpractice action, the physician was practicing in the specialty defined by the certificate of added qualification.

Defendants rely on *Halloran v Bhan*, 470 Mich 572, 575-580; 683 NW2d 129 (2004), in which the Supreme Court held that the plaintiff's medical expert should not be permitted to testify at trial[7] because, as a board-certified specialist in anesthesiology, he did not

a "notice of intent." Indeed, the letter is wholly silent regarding what specialty Dr. Selznick asserts he practices when treating infirm patients in the nursing home he directs.

[7] There was no challenge to the affidavit of merit and so the issue of counsel's reasonable belief was not addressed in *Halloran*.

"match" the qualifications of the defendant, who was a board-certified specialist in internal medicine, even though they each possessed certificates of additional qualification in critical care. However, *Halloran* was decided two years before *Woodard* and the decision was circumscribed by the fact that all parties to the case agreed that a certificate of added qualification did not constitute a board certification. Thus, in *Halloran*, the legal import of a certificate of added qualification was not an issue in dispute. See *id*. at 575 ("The parties do not dispute that the subspecialty certification [of added qualification] is not 'board certification' for the purpose of [MCL 600.2169]."). The plaintiff argued that his expert, who by the parties' agreement was only board certified in anesthesiology, should be permitted to testify against an internal medicine specialist simply because the case arose in a hospital's critical care unit and the parties shared a "subspecialty" by virtue of their matching certificates of added qualifications. *Id*. at 575-576. All three Court of Appeals judges concluded as a matter of law that "critical care medicine" cannot be considered a specialty because, as the parties agreed, there is no board certification available in it.[8] *Halloran v Bhan*, unpublished opinion per curiam of the Court of Appeals, issued March 8, 2002 (Docket No. 224548), unpub op at p 2; *id*. at 1-2 (HOEKSTRA, J., dissenting). The majority concluded that "[b]ecause there is no board certification for critical care medicine, the last sentence of § 2169(1)(a) does not apply to the present case." *Id*. (opinion of the Court) at 4. The majority therefore held that the requirement for specialized expert testimony

---

[8] While this Court and the Supreme Court have often used the term "subspecialty," it is worth noting that the term is never used in the statute, and it may be that the use of this nonstatutory term underlies some of the analytical challenges.

did not apply at all. The dissent agreed that critical care medicine is a not a specialty, but concluded that the defendant's internal medicine board certification meant that witnesses for or against him had to be board certified in internal medicine. *Id.* at 1 (HOEKSTRA, J., dissenting). The Supreme Court essentially adopted the analysis of the dissenting Court of Appeals judge, noting that "[t]he parties do not dispute that the sub-specialty certification is not 'board certification' for the purpose of the statute." *Halloran,* 470 Mich at 575. Accordingly, *Halloran* concluded that the defendant's only specialty was internal medicine and that the plain-tiff's expert, whose only specialty was anesthesiology, could not testify at trial regarding the standard of care.

Had *Halloran* been the last word on the question, we would agree with defendants that plaintiff's counsel could not have concluded that geriatric medicine is a specialty and that both defendants' and plaintiff's affiants are board-certified specialists in that field. However, *Halloran* was not the last word. In 2006, the Supreme Court decided *Woodard* along with its com-panion case, *Hamilton v Kuligowski.*

*Woodard* substantially changed the landscape in terms of what constitutes a specialty for purposes of MCL 600.2169(1)(a) and the way in which certificates of added qualification are to be construed.

First, *Woodard* held that "a certificate of special qualifications . . . constitutes a board certificate." *Woodard,* 476 Mich at 565. Thus, contrary to the parties' agreement in *Halloran,* a certificate of special or added qualification constitutes a "board certifica-tion."

Second, *Woodard* held that "a 'specialist' is some-body who can potentially become board certified. . . . Accordingly, if the defendant physician practices a

particular branch of medicine or surgery in which one can potentially become board certified, the plaintiff's expert must practice or teach the same particular branch of medicine or surgery." *Id.* at 561-562. Therefore, if a defendant has the training and experience necessary to qualify for a certificate of special qualification, the defendant is a specialist in that field. Putting it more directly, the Court held that "[a] subspecialty, although a more particularized specialty, is nevertheless a specialty." *Id.* at 562.

Third, *Woodard* held that when a defendant has multiple specialties, a testifying expert must only "match the one most relevant standard of practice or care—the specialty engaged in by the defendant physician during the course of the alleged malpractice, and, if the defendant physician is board certified in that specialty, the plaintiff's expert must also be board certified in that specialty." *Id.* at 560.

To put it in the form of a syllogism, *Woodard* tells us that:

(a) A certificate of special qualification is a board certification.

(b) Therefore, a certificate of special qualification in geriatric medicine is a board certification in geriatric medicine.

(c) Because board certification in geriatric medicine is available to physicians with the necessary training and experience, geriatric medicine is a specialty.

(d) If Dr. Selznick, who is board certified in both family medicine and geriatric medicine, was practicing geriatric medicine at the time this case arose, then the "one most relevant specialty" is geriatric medicine and it is that one specialty that plaintiff's expert must match.

(e) Both Dr. Selznick and plaintiff's expert affiant are board certified in the one most relevant specialty, i.e., geriatric medicine.

Having laid out this reasoning, we still decline to reach the question whether Dr. Compton may testify at trial regarding standard of care. *Halloran* has not been explicitly overruled, and we leave it to the Supreme Court to determine whether and to what extent *Woodard* did so.[9]

Moreover, *Woodard* presents a somewhat different factual situation from that in the present case. In that case, the Court concluded that a physician who is board certified in pediatrics may not testify regarding a physician who is board certified in pediatrics and also has a certificate of added qualification in pediatric critical care when the action arises in the context of care in a pediatric special care unit. *Id.* at 575-577. In the companion case, *Hamilton*, the Court held that an expert who was board certified in internal medicine and had a certificate of special qualifications in infectious disease (and spent more than 50% of his time treating infectious diseases) could not testify against a physician who was also board certified in internal medicine when the action arose in the context of "ordinary" internal medicine. *Id.* at 577-578. Neither of those cases involved the precise circumstances we are presented with here—where both doctors are board certified in geriatrics and the relevant area of practice is geriatrics, but their geriatric certifications were issued by different boards.[10]

---

[9] The *Woodard* majority made little reference to *Halloran*, citing it only twice—once in reference to the de novo standard of review for statutory interpretation questions, and once for the principle that if the defendant is board certified in the relevant specialty, the expert must also be board certified in it. *Woodard*, 476 Mich at 557, 562-563.

[10] The problem is further complicated by the fact that another recognized certifying body, the American Board of Physician Specialties,

We conclude that plaintiff's affidavit of merit regarding Dr. Selznick satisfied MCL 600.2912d. Our holding is limited, however, to that statute and the sufficiency of the affidavit of merit. We do not reach the question whether this expert may ultimately offer standard of care testimony at trial under MCL 600.2169 and respectfully suggest that the Supreme Court address this broader and more significant issue in an appropriate case.

For the same reason, we also deny BCC's motion to dismiss the claims against it based on allegations of physician malpractice. Indeed, the outcome is even more clear with regard to BCC, given that BCC's relevant affidavit of meritorious defense was signed by a physician who possessed only an internal medicine board certification, and no certification in either geriatric or family medicine. While plaintiff cannot have relied on this subsequently filed affidavit, the fact that BCC's counsel, who had access to greater information, concluded that a family medicine specialist was not required suggests that plaintiff's counsel's belief that Dr. Compton was a qualified affiant was reasonable.

IV. CONCLUSION

For the reasons discussed herein, the affidavits of merit filed by plaintiff's counsel complied with MCL 600.2912d. Accordingly, we reverse and remand for

certifies doctors in geriatric medicine directly rather than as a certificate of additional qualification. Geriatrics is recognized as a specialty by several certifying entities. The American Board of Physician Specialties lists geriatric medicine as a fully separate specialty. See American Board of Physician Specialties, *Geriatric Medicine* <http://www.abpsus.org/geriatric-medicine> (accessed March 23, 2015) [http://perma.cc/DE3N-WHEJ]. And, as the Supreme Court noted in *Woodard*, 476 Mich at 565, "nothing in § 2169(1)(a) limits the meaning of board certificate to certificates . . . recognized by the American Board of Medical Specialties or . . . the American Osteopathic Association." The statute contains no requirement that the physician-certifying organizations be identical.

further proceedings consistent with this opinion. We do not retain jurisdiction.

SHAPIRO, J., concurred with FORT HOOD, J.

DONOFRIO, P.J. (*concurring in part and dissenting in part*). I concur with the result reached by the majority with respect to the reversal of the grant of summary disposition on plaintiff's nursing malpractice claim. But because plaintiff's attorney could not have held a reasonable belief that his expert matched the necessary qualifications to render testimony on the standard of care with respect to defendant Dr. Thomas Selznick, I would affirm the grant of summary disposition on the physician malpractice claims.

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Allen v Bloomfield Hills Sch Dist*, 281 Mich App 49, 52; 760 NW2d 811 (2008). A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Weisman v U S Blades, Inc*, 217 Mich App 565, 566; 552 NW2d 484 (1996). When deciding a motion for summary disposition under this subrule, a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence then filed in the action or submitted by the parties in a light most favorable to the nonmoving party. MCR 2.116(G)(5); *Wilson v Alpena Co Rd Comm*, 474 Mich 161, 166; 713 NW2d 717 (2006). The motion is properly granted if the evidence fails to establish a genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Michalski v Bar-Levav*, 463 Mich 723, 730; 625 NW2d 754 (2001).

Additionally, questions of statutory interpretation and court rule interpretation also are reviewed de novo. *Ligons v Crittenton Hosp*, 490 Mich 61, 70; 803 NW2d

271 (2011). Further, whether a plaintiff's affidavit of merit complied with the requirements of MCL 600.2912d is reviewed de novo as a question of law. *Lucas v Awaad*, 299 Mich App 345, 377; 830 NW2d 141 (2013).

### I. NURSING MALPRACTICE CLAIM

I concur with the majority that the trial court erred by granting summary disposition with respect to the nursing malpractice claim. But because this issue can be decided solely on the basis of defendant Botsford Continuing Care (BCC) not supporting its motion for summary disposition with documentary evidence, I do not join in the majority's discussion related to whether plaintiff's counsel held a reasonable belief that a registered nurse can provide testimony on the standard of care for a licensed practical nurse.

When moving for summary disposition under MCR 2.116(C)(10), " '[t]he moving party must support its position with affidavits, depositions, admissions, or other documentary evidence.' " *Karaus v Bank of New York Mellon*, 300 Mich App 9, 17; 831 NW2d 897 (2013), quoting *St Clair Med, PC v Borgiel*, 270 Mich App 260, 264; 715 NW2d 914 (2006). As described by the majority, BCC's sole piece of evidence on who reinserted the PEG tube was a largely indecipherable nursing log. The "LPN" notation in the nursing notes, which BCC relies on, was not written where the log states that the PEG tube was replaced. And the signature after the notation "peg tube replaced", in fact, did not have an "LPN" notation.[1] Looking at these notes in a light most favorable to the nonmoving

---

[1] Plus, the signature does not resemble the signature earlier where the "LPN" notation is located.

party, *Wilson*, 474 Mich at 166, there is a question of fact regarding whether an RN or an LPN reinserted the PEG tube, and summary disposition was not appropriate.

Moreover, with the sheer lack of information available to plaintiff's counsel when the affidavit was prepared, one cannot conclude that counsel acted unreasonably in thinking that an RN was the one who replaced the PEG tube. This is true especially when considering that the person who signed the notation, "peg tube replaced," was not the same person who signed earlier with the "LPN" designation.

Consequently, the trial court erred by granting BCC's motion to dismiss this claim. Because the issue is resolved on the two bases I describe, I do not join the discussion that the majority engages in related to whether plaintiff's attorney's legal conclusion that an RN may offer testimony on the standard of care for an LPN was reasonable. See *Dessart v Burak*, 252 Mich App 490, 496 n 5; 652 NW2d 669 (2002) (stating that obiter dictum is a judicial comment that is not necessary to the decision and is not precedential).

## II. PHYSICIAN MALPRACTICE CLAIMS

Because I do not believe that plaintiff's attorney's belief was reasonable with respect to Dr. Gregory A. Compton possessing the relevant board certifications, I respectfully disagree with the majority's holding regarding the sufficiency of that affidavit. Accordingly, I would affirm the trial court's grant of summary disposition on the physician malpractice claims.

"MCL 600.2912d(1) provides that the plaintiff in a medical malpractice action must file with the complaint 'an affidavit of merit signed by a health professional who the plaintiff's attorney reasonably believes

meets the requirements of an expert witness under
[MCL 600.2169].' " *Lucas*, 299 Mich App at 377 (altera-
tion in original). MCL 600.2169(1), in turn, provides
the following:

> In an action alleging medical malpractice, a person
> shall not give expert testimony on the appropriate stan-
> dard of practice or care unless the person is licensed as a
> health professional in this state or another state and
> meets the following criteria:
>
> (a) If the party against whom or on whose behalf the
> testimony is offered is a specialist, specializes at the time of
> the occurrence that is the basis for the action in the same
> specialty as the party against whom or on whose behalf the
> testimony is offered. However, if the party against whom or
> on whose behalf the testimony is offered is a specialist who
> is board certified, the expert witness must be a specialist
> who is board certified in that specialty.

Our Supreme Court's holdings in *Halloran v Bhan*,
470 Mich 572; 683 NW2d 129 (2004), and *Woodard v
Custer*, 476 Mich 545; 719 NW2d 842 (2006), require
an expert witness testifying regarding the standard of
care to possess the same one relevant specialty as
possessed by the defendant. In *Halloran*, the facts
were very similar to the facts in the present case. In
*Halloran*, the question was whether a physician who
was board certified in anesthesiology and had a certifi-
cate of added qualification in critical care medicine
could testify against the defendant, who was board
certified in internal medicine and had a certificate of
added qualification in critical care medicine. Hence, at
first blush, as in our case, the two physicians in
*Halloran* shared subspecialties but not specialties.[2]
The Supreme Court held that the proposed witness

---

[2] As discussed later in this opinion, however, in fact the physicians at
issue in this case do not even share the same subspecialties.

could not testify regarding the standard of care. *Halloran*, 470 Mich at 578-579. The Court reasoned that because the physicians did not share the same board certification, the expert could not testify at trial with respect to the standard of care. *Id.* at 579.

Two years later, the Supreme Court decided *Woodard*. In *Woodard*, the Supreme Court held that the plaintiff's proposed witness, who was board certified in pediatrics, could not testify on the standard of care against the defendant, who was board certified in pediatrics but also possessed a certificate of special qualification in pediatric critical care medicine. *Woodard*, 476 Mich at 554, 577. The Court explained that "a subspecialty is a specialty within the meaning of § 2169(1)(a)." *Id.* at 566 n 12. This is the first time this legal conclusion was enunciated because in *Halloran*, 470 Mich at 575, the Court apparently accepted the parties' position that a subspecialty certification did not qualify as a "board certification" under the statute. Therefore, contrary to *Halloran*, "if a defendant physician has received a certificate of special qualifications, the plaintiff's expert witness must have obtained *the same* certificate of special qualifications in order to be qualified to testify under § 2169(1)(a)." *Woodard*, 476 Mich at 565 (emphasis added).

By ruling that Dr. Compton and Dr. Selznick were both "board certified in the one most relevant specialty, i.e., geriatric medicine," the majority is making an error. Dr. Compton was board certified in internal medicine and possessed a certificate of added qualification in geriatrics. Dr. Selznick was board certified in family medicine and had a certificate of added qualification in geriatrics. But just because their board certifications in their subspecialties shared the common word "geriat-

rics," it does not mean that those certifications are equivalent.[3]

As the Supreme Court in *Woodard* explained, "[A] 'subspecialty' is a particular branch of medicine or surgery in which one can potentially become board certified that *falls under a specialty or within the hierarchy of that specialty*. A subspecialty, although *a more particularized specialty*, is nevertheless a specialty." *Id.* at 562 (emphasis added). Thus, because subspecialties "fall[] under" a particular specialty or are "within the hierarchy" of a particular specialty, it is clear that subspecialties cannot be divorced from their parent specialties. In other words, it is technically inaccurate to simply state that a doctor possesses a subspecialty board certification in "geriatrics." Instead, that doctor possesses a subspecialty board certification in "geriatrics in the field of family medicine." Hence, Dr. Compton's board certification of "geriatrics in the field of internal medicine" is not the same as Dr. Selznick's board certification of "geriatrics in the field of family medicine."[4] As a result, under

---

[3] The majority claims that "Dr. Selznick now asserts that his only specialty is in family medicine and that he is not a specialist in geriatric medicine." The basis for this claim is unknown because Dr. Selznick clearly states in his brief on appeal, as he does on his web page, that he is board certified in family medicine with an "added qualification in Geriatrics." Likewise, Dr. Selznick never asserted that his certificate of added qualification in geriatrics was not the equivalent of a board certification. Indeed, he admits that the certificate of added qualification was issued by the American Osteopathic Board of Family Medicine, i.e., it was a board certification.

[4] If the majority's view were correct, then, regardless of how dissimilar the parent specialties were, a doctor could testify against a defendant as long as their subspecialties shared the same name or label. Hypothetically speaking, if the American Board of Dermatology created a subspecialty of "Geriatrics" (it does not currently exist), then a dermatologist who was certified in that subspecialty could testify against defendant because the subspecialties are the "same." I do not

MCL 600.2169(1)(a), Dr. Compton was not qualified to testify to the standard of care at trial against Dr. Selznick. See *id.* at 565.

However, that is not the end of the analysis because MCL 600.2912d(1) only requires that a plaintiff's attorney "reasonably believes" that an expert who writes an affidavit of merit meets the requirements for an expert witness. *Grossman v Brown*, 470 Mich 593, 598-599; 685 NW2d 198 (2004). This is a lesser standard than is required to have that expert testify at trial. *Id.* at 599. In determining the reasonableness of plaintiff's attorney's belief, a court must look to the resources available to the attorney at the time the affidavit of merit was prepared. See *id.* at 599-600.

In his response to defendant's motion for summary disposition, plaintiff's counsel argued that his belief was reasonable based on a review of Dr. Selznick's employer's website. As the majority notes, the preamble or introductory text on the web page states in general terms that Dr. Selznick was "Board Certified in Family Practice, Geriatrics and Medical Directorship of Long Term Care Facilities." However, lower on that same web page, it provides a heading in bold type, called "Board Certifications," and under that heading is a list of the specific board certifications Dr. Selznick possessed and the years he acquired them. Relevant to this discussion, it lists "AOBFP: 1991" and "AOBFP — CAQ Geriatrics: 1992." Thus, while the general text on the web page did not make it clear that the geriatrics certification was actually a subspecialty of family medicine, the notation "CAQ", which stands for "cer-

_____

believe that is what the statute permits. Although the discrepancy in the instant case (family medicine versus internal medicine) is not as stark as the difference in the dermatologist example, the difference is still fatal because the statute requires that there be no difference. See *Woodard*, 476 Mich at 562.

tificate of added qualification," makes clear that this certification was in relation to a narrower *subspecialty*.[5] See *Woodard*, 476 Mich at 562. Therefore, with AOBFP standing for the American Osteopathic Board of Family Physicians, it is clear that Dr. Selznick's board certification was in family medicine and that he also possessed a certification in the *subspecialty* of geriatrics *in the field of family medicine*. Accordingly, I would conclude that, looking at the website as a whole, it is apparent that plaintiff's attorney needed an expert who was board certified in geriatrics in the field of family medicine. As a result, I do not believe that plaintiff's counsel held a reasonable belief that Dr. Compton, who was known to be board certified in geriatrics in the field of internal medicine, matched Dr. Selznick's relevant board certification of geriatrics in the field of family medicine. Therefore, although the trial court never addressed the "reasonably believes" aspect of this issue, I would conclude that the trial court's ruling was correct, albeit with an incomplete analysis. See *Gleason v Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003) ("A trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason.").

To the extent that plaintiff and the majority rely on the fact that defendants similarly provided the wrong expert when they later supplied their affidavit of meritorious defense, this fact is irrelevant. Defense counsel's later unreasonableness cannot transform plaintiff's counsel's prior unreasonableness into being reasonable. In more familiar terms, "Two wrongs do not make a right." And more importantly, plaintiff's counsel did not have access to defendants' affidavit of

---

[5] At oral argument, plaintiff even conceded that a certificate of added qualification is synonymous with a *sub*specialty.

meritorious defense at the time the affidavit of merit was filed, so any reliance on that later-issued affidavit is misplaced. See *Grossman*, 470 Mich at 599-600.[6]

### III. AMENDMENT OF AFFIDAVITS

Plaintiff also contends that, even if any affidavit of merit were defective, she should be allowed to "amend" it by submitting a new one signed by the appropriately credentialed professional. The majority did not need to address this issue because it was moot given their resolution of the case. However, because I would conclude that Dr. Compton's affidavit of merit was deficient, I will briefly address the issue.

MCR 2.112(L)(2)(b) provides that "[a]n affidavit of merit . . . may be amended in accordance with the terms and conditions set forth in MCR 2.118 and MCL 600.2301." MCR 2.118(A)(2) provides that "a party may amend a pleading *only by leave of the court* or by written consent of the adverse party." (Emphasis added.) While an affidavit of merit is not a "pleading" under MCR 2.110(A), MCR 2.112(L)(2)(b), taken together with MCR 2.118(D), allows an affidavit of merit to be amended, and that amendment relates back to the date of the original filing of the affidavit.

---

[6] I also note that the majority's reliance on the supposed lack of any responses to plaintiff's notice of intent is not persuasive. First, because the notice of intent and the responses are all conducted before a complaint is filed, they are not filed in the lower court, and without any affidavits on this topic, it is impossible to discern exactly what was sent and received. Second, to the extent that the majority asserts that plaintiff received *nothing* in response to her notice of intent, this is not entirely accurate. A letter was issued in direct response to the notice of intent that stated that Dr. Selznick could not be liable because he "did not provide care to Mr. Jones." Even assuming arguendo that the response may not have met all of the statutory requirements of MCL 600.2912b(7)(a) through (d), it was nonetheless a communication received in response to the notice of intent.

Plaintiff alleges that the trial court erred by failing to even address this issue. However, any failure by the trial court to address amendment was reasonable because it appears that plaintiff never took the trial court up on its offer to pursue that remedy. A review of the lower court record reveals no motion by plaintiff to amend the affidavit. At best, in her response to defendants' motions for summary disposition, plaintiff cited the law that allows affidavits of merit to be amended, but she *never actually moved the trial court to permit amendment*. At the hearing on defendants' motions for summary disposition, the following exchange illustrates how the trial court allowed plaintiff to take any further action she deemed prudent:

> *The Court*: Okay. So the Court is going to grant defendant's motion for Summary Disposition pursuant to [MCR 2.116(C)(10)] as to all claims against Defendant Selznick, Livonia Family Physicians, and Botsford Continuing Care Corporation.
>
> The affidavit of merit was signed by a doctor who does not have the same general board certification as Doctor Selznick, which is contrary to statute. The affidavit of merit regarding the licensed practical nurse was signed by a registered nurse and is also inappropriate. Therefore, based upon the defective affidavits of merit, the motion is granted.
>
> I'm gonna decline to accept [defendants'] oral amendment to include [MCR 2.116(C)(7)] on this matter, so *I'm not gonna grant you a final judgment.*[7] [*Plaintiff's counsel*] *says he has further plans and I'm gonna allow him to pursue those.*

\* \* \*

---

[7] While the court intended to not issue a "final judgment," this is precisely what it did when it dismissed all the claims. MCR 7.202(6)(a)(i). It appears that the trial court really was attempting to dismiss the claims without prejudice.

> [*Plaintiff's Counsel*]: So, I mean, do we — can we still amend then, do we still —
>
> *The Court*: You're the lawyer.
>
> [*Plaintiff's Counsel*]: Okay.
>
> *The Court*: Okay.
>
> [*Plaintiff's Counsel*]: All right.
>
> *The Court*: You know. *I'm not gonna tell you what you should or shouldn't do and I don't know the merits of what you have planned, but I've left it open for you to do so.* [Emphasis added.]

Even after the trial court left the door "open" for plaintiff to take further action, no motion to amend was ever filed with the court. All the record shows is that plaintiff moved for reconsideration and after that motion was denied, she eventually filed a new complaint (presumably with the proper affidavits attached). With the trial court never precluding plaintiff from seeking to amend the affidavits in the original action, I perceive no error for this Court to correct.

Moreover, I openly question whether plaintiff's current desire to *substitute* the prior affidavits of merit with entirely new ones signed by different affiants qualifies as *amending* the prior affidavits. "Amendment" is defined in relevant part as "a change made by correction, addition, or deletion." *Random House Webster's College Dictionary* (2001). Here, there are no "changes" being made to the prior affidavits, let alone any "corrections," "additions," or "deletions." Instead, plaintiff's goal is to entirely replace the prior affidavits with new ones signed by new affiants. On the other hand, if an "amended" affidavit was signed by the same affiant with only changes to what the affiant was averring, then it would properly be considered an "amendment." Therefore, even if plaintiff had moved to

amend, I do not believe that this type of wholesale substitution would qualify as an "amendment" under the applicable court rules.

### IV. CONCLUSION

Accordingly, I agree that the trial court erred by dismissing the nursing malpractice claim, but I would affirm the trial court's dismissal related to the physician malpractice claim because plaintiff's attorney did not possess a reasonable belief that Dr. Compton met the requirements for an expert witness, rendering detective the affidavit of merit related to physician malpractice.